## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOHN DAUGHERTY and )
CYNTHIA DAUGHERTY, )
                          )
           **Plaintiffs,**      )       **CIVIL ACTION**
                          )
**v.**                          )       **No. 09-2523-KHV**
                          )
**PULTE HOMES OF GREATER** )
**KANSAS CITY,** )
                          )
           **Defendant.**      )
_____)

## MEMORANDUM AND ORDER

John and Cynthia Daugherty filed suit against Pulte Homes of Greater Kansas City for breach of warranty and contract related to the purchase of a home in Lenexa, Kansas. This matter is before the Court on Defendant Pulte's Motion For Summary Judgment And Memorandum Of Law In Support (Doc. #51) and Defendant Pulte Homes Of Greater Kansas City, Inc.'s Motion To Compel Arbitration As To Those Claims Arising Under The Parties' Purchase Agreement And Not Governed By The Terms And Conditions Of The Limited Warranty (Doc. #53), both filed August 13, 2010. For reasons stated below, the Court sustains defendant's motion for summary judgment in part, sustains defendant's motion to compel arbitration as to claims under the Purchase Agreement and remands the remaining state law claim for breach of the Limited Warranty to state court.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c);

accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which it carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250-51. In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251-52.

**Factual Background**

**I.      Compliance With Rules Governing Summary Judgment**

Plaintiffs have attempted to controvert many of defendant's facts, but nearly all of plaintiffs' responses are insufficient for one or more of the following reasons:[1]

1.      Many of plaintiffs' responses do not explain specifically what portion of defendant's statement of fact is disputed.  Plaintiffs repeatedly state that they "Deny. Admit." or "Admit.  Deny," see Response To ¶¶ 9-12, 17-26, 28-29, 32-34, 36, 42-45, 47-49, 51-60, without attempting to explain what portion of defendant's statement of fact that they admit and what portion that they deny.[2]  Under Rule 56.1(e) of the Local Rules and basic principles of persuasion, a responding party has a duty to fairly meet the substance of the matter asserted.

2.      Plaintiffs repeatedly refer to multi-page exhibits and cross reference lengthy

_____

[1]      The Court also notes that plaintiffs' entire factual response is single spaced in violation of local rules.  See D. Kan. Rule 5.1(a) (documents must be double-spaced).

[2]      For example, paragraph 34 of defendant's statement of facts states as follows: "Pursuant to the Warranty of Completion of Construction, '[t]he FHA Commissioner or the Secretary of Veterans' Affairs reserves the right to make a final determination as whether a defect exists and whether the builder must remedy the defect.'  (Doc. 18-4, Exh. H)."  In response, plaintiffs state as follows:

Deny.  Admit.  Sad realization for the Plaintiffs.  Two veteran homeowners purchased a home that was presented to them as constructed in accordance with 2003 International Residential Code, from a reputable builder, the Defendant, who issued a HUD Form 92541, a Warranty of Completion of Construction, and a 10-year warranty to induce the Veterans Administration to approve the Plaintiffs [sic] loan. And four (4) years later, despite filing numerous construction complaints with the Veterans Administration, the home is as defective today as it was constructed and unrepaired because the Defendant will not simply fix the home because they know the Veterans Administration cannot force the Defendant to repair it.  Reference Plaintiffs' previous responses given in paragraphs 12, 32, and 33 above.  The Plaintiffs admit these languages [sic] appears in the said document.  Reference Plaintiffs' Exhibit M and B.

Plaintiffs' Opposition In Response To Defendant's Motion For Summary Judgment And Memorandum In Support (Doc. #62) filed September 7, 2010 at 23.

-3-

responses without any pinpoint cites.[3]  Under Rule 56.1(b) of the Local Rules, all references in factual statements shall be with particularity to those portions of record which non-movant relies.  Plaintiff's broad references provide little aid to the Court or opposing counsel.  See United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); Boldridge v. Tyson Foods, Inc., No. 05-4055-SAC, 2007 WL 1299197, at *2 (D. Kan. May 2, 2007) (duty of parties contesting motion for summary judgment to direct court to places in record where evidence exists to support their positions).

3.  In response to many of defendant's statements of fact, plaintiffs include lengthy portions of legal argument with no references to the factual record or legal authorities.[4]  Legal argument belongs in the argument section of a brief.

---

[3]       For example, paragraph 56 of defendant's statement of facts states as follows: "Plaintiffs testified that they refused to allow Pulte to make repairs because they believed that the method of making such repairs should be governed by their judgment or the judgment of their agents, rather than the judgment of Pulte or Pulte's engineers.  (See Exh. C, John Daugherty Depo., 34:23 to 37:1; Exh. E, Cynthia Daugherty Depo., 38:25 to 40:16)."  Plaintiffs' response to this fact is "Deny.  Admit.  See Plaintiffs' response to paragraphs 12, 18, 51, 52, 53, 54, and 55 above." Unfortunately, plaintiffs' response to the referenced paragraphs is some 24 pages of single spaced text and provides little insight as to what is possibly relevant to plaintiffs' response to paragraph 56. See also Response To ¶ 10 (referring to plaintiffs' entire depositions without pinpoint cites; setting forth more than eight pages of e-mails between plaintiffs and Pulte without attempting to relate the e-mails to defendant's statement of fact); Response to ¶¶ 2, 9, 33, 34, 41 (referring generally to plaintiffs' Exhibit M which consists of some 116 pages of closing documents).

[4]       For example, paragraph 25 of defendant's statement of fact states that "[t]he March 23, 2007 Buy Back Letter does not request warranty service; rather it demands that Pulte 'buy back' the Residence.  (Exh. G, March 23, 2007 Letter to William J. Pulte, at 1 (Deposition Exhibit No. 8))."  In response, plaintiffs state as follows:

Deny.  Admit.  Any consumer, purchasing anything, from a roll of toilet paper to a home, that when [sic] the product, services, or goods does not meet the customer's satisfaction will first seek to remedy the problem by requesting repurchase or in some cases an exchange of goods.  It is a normal, widely acceptable, practice that many companies utilize in order to keep their customers happy and hopefully returning for future purchases, simply because they treated their customers with respect and dignity.  Their fulfillment of the customer's expectation demonstrates pride and integrity by honoring the request.  The act of requesting that the Defendant to [sic] repurchase the home should not or ever be construed as something the judicial system has interpret [sic] in the past as wrong or illegal, it was simply a request that was denied by the Defendant.  It is what it is.  Period.

(continued...)

4. Plaintiffs have attached numerous exhibits with no affidavit or deposition testimony to authenticate the exhibits. Under D. Kan. Rule 56.1(d), "[a]ll facts on which a motion or opposition is based must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admission." No provision in the Federal Rules of Civil Procedure or the Local Rules for the District of Kansas allows a party to simply attach a document as an exhibit with no supporting affidavit, deposition testimony, or other relevant evidence authenticating the document.

In light of the numerous deficiencies in plaintiffs' response to defendant's factual statement, the Court ordinarily would strike nearly all of plaintiffs' factual response for failure to comply with D. Kan. Rule 56.1.[5] Because defendant's motion for summary judgment has been pending for some

---

[4](...continued)

The same letter cited was also sent on or about March 23, 2007 from the Plaintiff, Cynthia C. Daugherty to Mr. Richard J. Dugas, Jr. CEO of Pulte Homes, Reference Plaintiffs' Exhibit V, includes the following quote: "We have owned this home of 218 days (August 18th, 2006–March 23rd, 2007), of which 168 days have circumvented around Pulte Homes. It is safe to say that our entire period of ownership has focused on repairs verus enjoyment. No homeowner should be saddled with a defective home that is evident of incompetence, carelessness, and poor craftsmanship and is beyond any reasonable score of warrantable repair."

The Plaintiffs' [sic], since receiving the refusal from the Defendant, have consistently requested remedy [sic] from the Defendant, who has repeatedly refused to acknowledge their responsibilities. It has been their refusal to issue a Work Proposal that is reflective of their intent to stand behind their promised "Nation's Best Warranty". Plaintiffs admit they sent both letters to Mr. William J. Pulte and Mr. Richard J. Dugas on March 23, 2007.

Plaintiffs' Opposition (Doc. #62) at 21.

[5] The Court has no desire to make "technical minefields" of summary judgment proceedings, but neither can it countenance laxness in the proper and timely presentation of proof. Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993). In some circumstances, the Court has ordered the plaintiff to re-file a response in compliance with the rules, ordered defendant to file another reply and ordered plaintiff to reimburse defendant for attorney fees to file the additional reply. Effective December 1, 2010, under Rule 56 of the Federal Rules of Civil Procedure, if a party fails to properly

(continued...)

three months and litigants should not succumb to summary judgment merely because their counsel fails to comply with the technical requirements involved in defending such a motion, however, the Court will attempt to properly set forth the facts in a light most favorable to plaintiffs and to search the record to determine whether genuine issues of material fact preclude the entry of summary judgment for defendant.[6]

## II.    Statement Of Facts

The following material facts are uncontroverted, deemed admitted or, where controverted, viewed in the light most favorable to the non-movants, John and Cynthia Daugherty.

On January 8, 2006, under a Purchase Agreement, Pulte Homes of Greater Kansas City, Inc. ("Pulte") agreed to design and construct a home at 8712 Quill Street in Lenexa, Kansas. <u>See</u> Purchase Agreement, attached as Exhibit B to <u>Defendant Pulte's Motion For Summary Judgment And Memorandum Of Law In Support</u> (Doc. #51) filed August 13, 2010. On August 18, 2006, the Daughertys and Pulte closed on the purchase agreement and plaintiffs took possession of the home. In part, plaintiffs financed the purchase by a Veterans' Administration ("VA") loan. Plaintiffs still reside in the home. The home is not and has never been unsafe or uninhabitable.

---

[5](...continued)
support or address an assertion of fact, the Court has discretion to (1) give a party an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials show that the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

[6]    Even if a non-movant does not respond at all, the Court must determine whether the movant is entitled to summary judgment on the merits. <u>See</u> Fed. R. Civ. P. 56(e)(3) (effective December 1, 2010); <u>see also</u> former Fed. R. Civ. P. 56(e)(2) (must determine whether summary judgment is appropriate).

A.    Purchase Agreement

Under the Purchase Agreement, Pulte warranted the home against defects in workmanship and materials subject to and limited by the Limited Warranty.  See Purchase Agreement ¶ 7; see also Limited Warranty, attached as Exhibit F to Defendant Pulte's Motion For Summary Judgment And Memorandum Of Law In Support (Doc. #51).  The Purchase Agreement provides that "any controversy, claim or dispute arising out of construction or design issues (other than claims under the Limited Warranty)" shall be mediated and, if mediation fails, arbitrated.  See Purchase Agreement ¶ 17.[7]

B.    Limited Warranty

Plaintiffs received a copy of the Limited Warranty when they executed the Purchase Agreement and again at closing.  At the time of closing, plaintiffs understood how to request customer service from Pulte.

The Limited Warranty defines "Covered Defects" as "defects in material and workmanship that are either part of the structure or are elements of the home" at the date of closing.  Limited

---

[7]    Paragraph 17 in its entirety states as follows:

**ARBITRATION**: Any controversy, claim or dispute arising out of or relating to this Agreement or Your purchase of the Home (other than claims under the Limited Warranty) shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA") and the Federal Arbitration Act (Title 9 of the United States Code), and judgment rendered by the arbitrator(s) may be confirmed, entered and enforced in any court having jurisdiction.  As a condition precedent to arbitration, the dispute shall first be mediated in accordance with the Construction Industry Mediation Rules of the AAA, or such other mediation service selected by [Pulte].  Claims under the Limited Warranty will be arbitrated in accordance with the arbitration provision set forth in the Limited Warranty.

Purchase Agreement ¶ 17.

Warranty at 6. The Limited Warranty states that Covered Defects are governed by one of four coverage periods.[8] The Limited Warranty provides that to preserve a claim under the warranty, the homeowner must submit written notice of a claim to Pulte and the Plan Administrator "by certified mail, return receipt requested." Limited Warranty at 9. Plaintiffs testified that except for a single letter sent to William J. Pulte dated March 23, 2007 (the "March 23, 2007 Buy Back Letter"), they did not provide any notice to Pulte via certified mail, return receipt requested. In the March 23, 2007 Buy Back Letter, plaintiffs did not request warranty service; rather, they demanded that Pulte "buy back" the house.

---

[8]     In particular, the Limited Warranty states as follows:

**ONE YEAR COVERAGE:** THE BUILDER warrants the construction of the home will conform to the tolerances for materials and workmanship, as defined in the Performance Standards, for a period of one year after the closing date.

**TWO YEAR COVERAGE:** THE BUILDER warrants the workability of the plumbing, electrical, heating, ventilating, air conditioning and other mechanical systems, as defined in the Performance Standards, for a period of two years after the closing date.

**FIVE YEAR COVERAGE:** THE BUILDER warrants against various types of water infiltration and internal leaks, as specifically defined in the Performance Standards, for a period of five years after the closing date.

**TEN YEAR COVERAGE:** THE BUILDER warrants the construction of the home will conform to the tolerances set forth in the below Performance Standards for Structural Elements for a period of ten years after the closing date, subject to the limitations set forth below. Structural Elements are footings, bearing walls, beams, girders, trusses, rafters, bearing columns, lintels, posts, structural fasteners, subfloors and roof sheathing. A Structural Element will not be deemed defective, and no action will be required of THE BUILDER, unless there is actual physical damage that diminishes the ability of the Structural Element to perform its load-bearing function such that the home is unsafe.

Limited Warranty at 6.

Pursuant to the Limited Warranty, the parties agreed that any failure by plaintiffs to allow Pulte reasonable access to the home during normal working hours for making repairs would relieve Pulte from its obligations under the Limited Warranty.[9]  In addition, the Limited Warranty provides that Pulte "reserves the right to use its judgment in determining the most appropriate method of repairing warranty defects."  Limited Warranty at 7.

The Limited Warranty contains a jury trial waiver provision, which is set off in its own paragraph and entitled, "**WAIVER OF JURY TRIAL**":

> **WAIVER OF JURY TRIAL**: To the extent the laws of your state preclude an agreement that requires the parties to submit to binding arbitration, or to the extent a court of competent jurisdiction finds that any claim between THE BUILDER and THE HOMEOWNER is not subject to binding arbitration pursuant to the provisions of this LIMITED WARRANTY, then THE BUILDER and THE HOMEOWNER knowingly waive trial by jury in any action, proceeding or counterclaim brought by either of them in connection with this agreement regardless of the claim(s) made or damages sought.  This waiver of jury trial will extend to any third party named in any proceedings by THE BUILDER or THE HOMEOWNER.

Limited Warranty at 10.

---

[9]     The Limited Warranty states as follows:

The benefits included in this LIMITED WARRANTY are only available when service is requested according to the procedures established by THE BUILDER and included in your warranty material.  In addition, THE HOMEOWNER's failure to reasonably provide access to the home during normal working hours for making repairs will relieve THE BUILDER from its obligations under this warranty.  THE BUILDER's aggregate total liability shall not exceed the original contract price of the home.

Limited Warranty at 7.

C.     Warranty of Completion of Construction

At some point, plaintiffs received a copy of a "Warranty of Completion of Construction."[10]

See Exhibit H to Defendant Pulte's Motion For Summary Judgment And Memorandum Of Law In

Support (Doc. #51).  The stated purpose of the Warranty of Completion of Construction is to induce

the FHA and/or the VA to guarantee and/or insure mortgages to veterans.  The Warranty of

Completion of Construction provides as follows:

> [T]his warranty shall apply only to such instances of substantial nonconformity as
> to which the Purchaser(s)/Owners or his/her (their) successors or transferees shall
> have given written notice to the Warrantor at any time or times within one year from
> the date of original conveyance of title to such Purchaser(s)/Owner(s) or the date of
> initial occupancy, whichever first occurs . . . .

Id.  Pursuant to the Warranty of Completion of Construction, "[t]he FHA Commissioner or the

Secretary of Veterans' Affairs reserves the right to make a final determination as whether a defect

exists and whether the builder must remedy the defect."  Id.

As part of the financing and/or closing documents on their home, plaintiffs signed a

document from the Veterans Administration entitled, "Home Loan Guaranty Benefits."  The Home

Loan Guaranty Benefits document states as follows: "If you have a home built, VA cannot compel

the builder to correct construction defects although the VA does have the authority to suspend a

builder from further participation in the home loan program."  Exhibit Defendant Pulte's Motion

For Summary Judgment And Memorandum Of Law In Support (Doc. #51).

The Department of Veterans Affairs website instructs veterans with complaints about a

newly constructed home that was inspected by VA (or HUD/FHA) as follows:

If the new home was inspected by a fee compliance inspector assigned by VA or

---

[10]     The copy which plaintiffs have provided is not signed by plaintiffs or Pulte.

HUD during construction, VA has complaint processing procedures that are used to attempt to get the builder to correct construction defects which the VA determines are the builder's responsibility. A complaint must be registered with VA within the first year of ownership. Ultimately, VA does not have the authority to force a builder to make corrections to a property. Also, some problems about which a veteran complains may be determined by VA to be within minimum standards of acceptable building practice. In such cases, VA will not look to the builder for correction. However, when builders refuse to correct items which VA determines are their responsibility to correct, VA will take administrative sanctions against them and refuse to do further business with them. In the end, some veterans may still need to pursue legal action against the builder.

Exhibit K to Defendant Pulte's Motion For Summary Judgment And Memorandum Of Law In Support (Doc. #51).

      D.      Efforts To Identify Items To Repair

After plaintiffs raised numerous complaints with Pulte and shortly before Pulte's three-month scheduled follow-up inspection, Pulte informed plaintiffs that it remained committed to honoring the warranty. See E-mail Dated November 13, 2006 From Josh Wallace (General Manager of Customer Relations at Pulte) To Cynthia Daugherty, Exhibit J to Plaintiffs' Supplemental Exhibits (Doc. #64) at 23. Pulte suggested the following procedure to address any defects:

Step #1:
- Visually inspect the items you submitted via email to ensure we (Pulte) fully understand the scope of work necessary per the terms outlined in the Pulte warranty.
- Conduct 3-month service review and identify any warrantable items not on the current list
- Have a plumbing professional cap the pipe in the basement.

Step #2:
- Pulte Homes to draft a document identifying action(s) to be taken on these warrantable items. We will review the document with you to ensure proper expectations and alignment. Document will be signed and dated by all parties prior to proceeding with work.

Step #3:
- Schedule trade professionals to complete agreed upon items and perform

engineering inspections.

○ Pulte to schedule a professional engineer to visually inspect foundation cracks and position of isolation rings. Engineer to provide professional recommendations as to the necessary repairs and the re-establishment of isolation rings under the monoposts.

○ Pulte to schedule elevation readings to be performed on the basement concrete slab. These results to be provided to the professional engineer to assist in drafting recommendations.

Step #4:

○ Discuss engineering recommendations with you and appropriate action(s) to be taken per the Pulte warranty.

○ Pulte Homes to draft a document identifying these actions. We will review the document with you to ensure proper expectations and alignment. Document will be signed and dated by all parties prior to proceeding with work.

Step #5:

○ Schedule trade professionals to complete agreed upon items from Step #4.

Id.

During the three-month inspection procedure, the Daughertys claimed that the house had "defects" that Pulte was required to repair pursuant to the Limited Warranty. Pulte investigated these complaints and on February 22, 2007, Pulte gave plaintiffs a work proposal (February 2007 Work Proposal). See Exhibit L to Defendant Pulte's Motion For Summary Judgment And Memorandum Of Law In Support (Doc. #51). The proposal stated that it was "an outline of the suggested repairs and the estimated timeframe needed to conduct the repairs," but that "these actions may, or may not, be all inclusive and the timeframe listed could change because of unforeseen circumstances." Id. The proposal stated that it addressed (1) pier pad / footing locations, (2) hairline cracks in foundation walls and hole in foundation wall, (3) basement stair framing detail and (4) engineered floor joist deflection. In addition, the proposal noted that after the repairs were completed, Pulte would (1) repair the cosmetic finishes within the home that had been affected by

the pier pad repairs, (2) complete repairs as outlined in the Service Request #KC17170, dated November 17, 2006, which included 38 numbered tasks such as drywall repair, caulking, adjusting various doors, replacing window screen and painting and (3) weather permitting, complete repairs to the exterior and landscaping of the home that had been affected by the pier pad repairs along with the items noted in the Service Request #KC17196, dated November 17, 2006 which related to settlement of soil in front of the house, poor drainage and standing water in the yard. Id.

Plaintiffs did not permit Pulte to make any of the repairs set forth in the February 2007 Work Proposal. Plaintiffs refused to let Pulte conduct any of the repairs set forth in the February 2007 Work Proposal because they did not want Pulte to attempt to correct the pier pads. See Cynthia Daugherty Depo. at 71-72 (told Pulte that she did not want pier pad situation corrected but wanted floor fixed and lot graded, but Pulte said take it all or nothing); id. at 71 (gave Pulte copy of Hudson report which recommended that pier pads not be corrected because of risk of further damage); see also id. at 38-40 (refused to allow repairs because engineer hired by plaintiffs only able to monitor work, engineer had no right to stop work if he thought it was unsafe). On March 23, 2007, in response to Pulte's February 2007 Work Proposal, plaintiffs demanded that Pulte buy back the house and pay damages in a total cost to Pulte of $390,808.32. See Exhibit G to Defendant Pulte's Motion For Summary Judgment And Memorandum Of Law In Support (Doc. #51).

On August 15, 2007, Cynthia Daugherty met with John Connelly of Pulte. Ms. Daugherty told Connelly that she wanted Pulte to buy back her home. See Cynthia Daugherty Depo. at 40-41. When Connelly stated that Pulte would not buy back the home, plaintiff asked him and another Pulte representative to leave. See id. at 41. Later on August 15, 2007, by e-mail, Ms. Daugherty again asked Pulte for an all-inclusive work proposal/statement of work. In response, Pulte demanded that

before giving plaintiffs a revised work proposal/statement of work, plaintiffs must agree to let Pulte do all the remedies suggested in the work proposal.

Plaintiffs allege three different claims for breach of contract: breach of the Warranty of Completion of Construction, breach of the Purchase Agreement and breach of the Limited Warranty. See Pretrial Order (Doc. #55) at 11-12. Under each theory, plaintiffs seek repairs to their home at an approximate cost of $252,900.00. See Pretrial Order (Doc. #55) at 21.

## Analysis

### I. Breach Of Warranty Of Completion Of Construction

Plaintiffs allege that Pulte breached a Warranty of Completion of Construction, HUD Form 92544. See Pretrial Order (Doc. #55) at 11-12. Pulte argues that consistent with this Court's prior ruling, plaintiffs cannot assert a private cause of action for breach of the Warranty of Completion of Construction. On Pulte's motion, the Court dismissed Count IV of plaintiffs' amended complaint which included their claim for breach of the Warranty of Completion of Construction. See Memorandum And Order (Doc. #32) at 5; First Amended Complaint For Damages (Doc. #18) ¶ 53 ("Pulte breached the Warranty of Completion of Construction filed with the VA"). Plaintiffs do not cite any statutory authority for such a claim or attempt to explain how their claim survives this Court's ruling on defendant's motion to dismiss.[11] See California v. Sierra Club, 451 U.S. 287, 297 (1981) (federal judiciary will not engraft remedy on statute, no matter how

_____

[11] Plaintiffs here do not assert that the Warranty of Completion of Construction constitutes a contract or part of the bargain between plaintiffs and Pulte. Indeed, the document is unsigned by plaintiffs and Pulte, and plaintiffs have presented no evidence to suggest that the parties ever signed such a document. Here, the VA issued a loan guaranty because Pulte issued a separate 10-year Limited Warranty. See Correspondence From VA To Cynthia Daugherty, Exhibit K to Plaintiffs' Supplemental Exhibits (Doc. #64) at 1, 4-6. As the VA informed plaintiffs in 2007, they must file complaints about alleged defects under that Limited Warranty. See id.

salutary, that Congress did not intend to provide).  Plaintiffs argue that under the warranty which

they attempt to enforce, defendant must repair all defects reported to the Veterans Administration.

See Plaintiffs' Opposition (Doc. #62) at 23.  Plaintiffs concede, however, that under the warranty

they attempt to enforce, the VA "cannot force the Defendant to repair" the home.  Id.[12]  Because

plaintiffs have not shown that they can enforce an unsigned Warranty of Completion of Construction

against Pulte, the Court sustains defendant's motion for summary judgment on this claim.[13]

## II.      Breach Of Purchase Agreement

Plaintiffs allege that Pulte breached the Purchase Agreement by (1) misrepresenting the

manner in which the home was constructed at the time of closing and (2) not fully disclosing the

unstable soil conditions on the lot and that expansive soil was used as backfill around the foundation

walls.  Pretrial Order (Doc. #55) at 9.  Pulte argues that to the extent that plaintiffs can maintain a

claim for breach of the Purchase Agreement apart from their claim for breach of the Limited

---

[12]      The stated purpose of the Warranty of Completion of Construction is to induce the
FHA and/or the VA to guarantee and/or insure mortgages to veterans.  Pursuant to the Warranty of
Completion of Construction, "[t]he FHA Commissioner or the Secretary of Veterans' Affairs
reserves the right to make a final determination as whether a defect exists and whether the builder
must remedy the defect."  Exhibit H to Defendant Pulte's Motion For Summary Judgment And
Memorandum Of Law In Support (Doc. #51); see Department of Veterans Affairs website,
"Post-Loan Frequently Asked Questions," attached as Exhibit K to Defendant Pulte's Motion For
Summary Judgment And Memorandum Of Law In Support (Doc. #51) (VA ultimately not
authorized to force builder to correct property; if builders refuse to correct items, VA will take
administrative sanctions against them and refuse to do further business with them).

[13]      In response to defendant's statement of facts, plaintiffs apparently assert that HUD
Form 92541, entitled "Builder's Certification of Plans, Specifications, & Site," creates an
enforceable warranty which a homeowner can enforce against a builder.  See Plaintiffs' Opposition
(Doc. #62) at 23-25.  The pretrial order does not include a claim for breach of such a warranty.  See
Pretrial Order (Doc. #55) at 11-12.  In addition, plaintiffs do not assert that Pulte breached any
warranty other than the 10-year Limited Warranty and the Warranty of Completion of Construction.
See Cynthia Daugherty Depo. at 69.  The Court therefore need not address plaintiffs' argument
included in their response to defendant's statement of facts.

Warranty, the claim under the Purchase Agreement must be arbitrated. See Defendant Pulte Homes Of Greater Kansas City, Inc.'s Motion To Compel Arbitration As To Those Claims Arising Under The Parties' Purchase Agreement And Not Governed By The Terms And Conditions Of The Limited Warranty (Doc. #53) filed August 13, 2010.[14]

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., ensures that contractual agreements to arbitrate disputes are "valid, irrevocable, and enforceable." 9 U.S.C. § 2; see Hill, 603 F.3d at 770-71. Federal policy favors arbitration agreements and requires that the Court rigorously enforce them. Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987). On a motion to compel arbitration under the FAA, the Court applies a strong presumption in favor of arbitration. ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995) (FAA evinces strong federal policy in favor of arbitration); see Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) (court should resolve any doubts concerning scope of arbitrable

---

[14] Plaintiffs question the timing of Pulte's motion, but do not contend that Pulte waived the right to raise the issue. See Plaintiffs' Opposition To Pulte Homes Of Greater Kansas City, Inc.'s Motion To Compel Arbitration As To Those Claims Arising Under The Parties' Purchase Agreement And Not Governed By The Terms And Conditions Of The Limited Warranty (Doc. #60) filed September 7, 2010 at 1 ("This suggestion of arbitration on behalf of the Defendant is a surprise as to the timing of the arbitration request. The Plaintiffs have expended an exorbitant effort in their summary judgment response."). Even if plaintiffs had specifically raised the issue, the record does not support a waiver. Due to strong state and federal policies favoring arbitration, a party asserting a waiver of arbitration has a heavy burden of proof. See Peterson v. Shearson/Am. Express, Inc., 849 F.2d 464, 466 (10th Cir. 1988). A waiver of arbitration rights requires an unequivocal demonstration of intent to waive. Robinson v. Food Serv. of Belton, Inc., 415 F. Supp.2d 1221, 1224-25 (D. Kan. 2005). Pulte did not raise the issue of arbitration until the deadline for filing dispositive motions, but based on the uncertainty that plaintiffs even had a plausible claim for breach of the Purchase Agreement (separate and apart from their claim for breach of the Limited Warranty), Pulte's delay was reasonable and does not appear to be an attempt to manipulate the judicial process. See Hill v. Ricoh Ams. Corp., 603 F.3d 766, 773 (10th Cir. 2010) (important consideration in assessing waiver is whether party now seeking arbitration is improperly manipulating judicial process); Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1489 (10th Cir. 1994) (waiver depends on facts of particular case).

issues in favor of arbitration). Where the parties dispute whether a valid and enforceable arbitration agreement exists, however, this presumption of arbitrability disappears. <u>Riley Mfg. Co. v. Anchor Glass Container Corp.</u>, 157 F.3d 775, 779 (10th Cir. 1998).

In seeking to compel arbitration, defendant bears the initial burden to present evidence sufficient to demonstrate an enforceable agreement to arbitrate. <u>SmartText Corp. v. Interland, Inc.</u>, 296 F. Supp.2d 1257, 1263 (D. Kan. 2003). Defendant has satisfied its burden as the Purchase Agreement clearly includes an arbitration clause which states that the parties will arbitrate any controversy, claim or dispute which arises out of or relating to the agreement.[15] Plaintiffs concede that they signed the Purchase Agreement. Plaintiffs argue, however, that because they purchased their home under the VA Home Loan Guaranty Program, the binding arbitration provision does not apply. Plaintiffs rely on a HUD regulation which provides as follows:

> In the event of any dispute regarding a homeowner complaint or structural defect claim, Plans must, unless prohibited by applicable law, provide for binding arbitration proceedings arranged through a nationally recognized dispute settlement organization. The sharing of arbitration charges shall be as determined by the Plan. A Plan must contain pre-arbitration conciliation provisions at no cost to the

---

[15]       In its entirety, the arbitration clause states as follows:

**ARBITRATION**: Any controversy, claim or dispute arising out of or relating to this Agreement or Your purchase of the Home (other than claims under the Limited Warranty) shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA") and the Federal Arbitration Act (Title 9 of the United States Code), and judgment rendered by the arbitrator(s) may be confirmed, entered and enforced in any court having jurisdiction. As a condition precedent to arbitration, the dispute shall first be mediated in accordance with the Construction Industry Mediation Rules of the AAA, or such other mediation service selected by [Pulte]. Claims under the Limited Warranty will be arbitrated in accordance with the arbitration provision set forth in the Limited Warranty.

Purchase Agreement ¶ 17.

homeowner, and provision for judicial resolution of disputes, but arbitration, which must be available to a homeowner during the entire term of the coverage contract, must be an assured recourse for a dissatisfied homeowner.

24 C.F.R. § 203.204(g). Plaintiffs ignore that this regulation applies to 10-year home protection plans such as Pulte's 10-year Limited Warranty. <u>See</u> 24 C.F.R § 203.200 ("Insured ten-year protection plan or Plan" means agreement between homeowner and Plan issuer which, among other things, contains warranties regarding construction and structural integrity of dwelling).[16] Plaintiffs offer no rationale for applying this regulation to the Purchase Agreement. Based on the unambiguous language of the Purchase Agreement, plaintiffs' claim for breach of that agreement must be arbitrated. The Court therefore sustains defendant's motion to compel arbitration on plaintiffs' claim for breach of the Purchase Agreement and dismisses that claim without prejudice.[17]

**III.    Jurisdiction Over Remaining Claim**

Pulte originally removed this action from state court based on plaintiffs' claim under the Real

---

[16]    The Limited Warranty includes an addendum which provides for judicial resolution of disputes in addition to the binding arbitration procedure. The Limited Warranty states as follows:

The HOMEOWNER of a home with original FHA/VA financing is not required to submit disputes related to or arising out of this LIMITED WARRANTY to the Binding Arbitration procedure available here, however, if THE HOMEOWNER elects to pursue the dispute to a final resolution, including judicial resolution of disputes, such election shall bar THE HOMEOWNER from pursuing the same dispute against this LIMITED WARRANTY through the Binding Arbitration procedure provided herein.

Limited Warranty at 45-46.

[17]    Based on the record, the Court cannot ascertain how apart from the Limited Warranty, plaintiffs allege that Pulte breached the Purchase Agreement. <u>See</u> John Daugherty Depo. at 13-14 (Pulte breached Purchase Agreement because they did not fix anything; essentially admitting that claim for breach of Purchase Agreement based solely on failure to make repairs under Limited Warranty). Even so, to the extent such a claim is plausible, it must be arbitrated under the Purchase Agreement.

Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. See Notice Of Removal (Doc. #1) at 2. Plaintiffs have not included this claim in the pretrial order. See Pretrial Order (Doc. #55) at 22. The pretrial order notes that federal law governs plaintiffs' claim for breach of the Warranty of Completion of Construction, see id. at 3, but the Court has sustained Pulte's motion for summary judgment on that claim. Plaintiffs' remaining claim is a state law claim for breach of the Limited Warranty.[18]

Under 28 U.S.C. § 1367(c)(3), a district court has discretion to decline to exercise supplemental jurisdiction once it has dismissed the claims over which it had original jurisdiction. Lancaster v. Indep. Sch. Dist. No. 5, 149 F.3d 1228, 1236 (10th Cir. 1998). If the court dismisses all federal claims before trial, it will generally decline to exercise jurisdiction over the remaining state law claims. Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990). At this relatively late stage of pretrial proceedings, the Court occasionally exercises jurisdiction over remaining state law claims. In this case, however, plaintiffs have one remaining claim (breach of the Limited Warranty). As to that claim, plaintiffs have not addressed the rules of contract interpretation or how they apply to the facts of this case. Furthermore, defendant does not address the effect of plaintiffs' refusal to let it conduct one particular repair while simultaneously asking it to conduct all other repairs.[19] Neither Kansas law nor the Limited Warranty provide an obvious

---

[18] Above, the Court addressed plaintiffs' state law claim for breach of the Purchase Agreement because Pulte sought to enforce the parties' arbitration agreement under the Federal Arbitration Act.

[19] Pulte characterizes plaintiffs' conduct as a blanket refusal of all repairs and a demand that Pulte buy back the home. The record does not reflect that plaintiffs refused to let Pulte conduct all repairs. See Cynthia Daugherty Depo. at 71-72 (told Pulte that she did not want pier pad situation corrected but wanted floor fixed and lot graded, but Pulte said take it all or nothing). At
(continued...)

answer.  Because undecided questions of state law dispose of the only remaining claim in this non-diversity case, and in the interest of comity and federalism, the Court declines to exercise supplemental jurisdiction over plaintiffs' state law claim for breach of the Limited Warranty.  <u>See</u> <u>id.</u> (notions of comity and federalism demand that state court try its own lawsuits, absent compelling reasons to contrary).

**IT IS THEREFORE ORDERED** that <u>Defendant Pulte's Motion For Summary Judgment And Memorandum Of Law In Support</u> (Doc. #51) filed August 13, 2010 be and hereby is **SUSTAINED in part**.  The Court sustains defendant's motion for summary judgment as to plaintiffs' claim for breach of the Warranty of Completion of Construction.

**IT IS FURTHER ORDERED** that <u>Defendant Pulte Homes Of Greater Kansas City, Inc.'s</u> <u>Motion To Compel Arbitration As To Those Claims Arising Under The Parties' Purchase</u> <u>Agreement And Not Governed By The Terms And Conditions Of The Limited Warranty</u> (Doc. #53) filed August 13, 2010 be and hereby is **SUSTAINED.**  The Court dismisses without prejudice plaintiffs' claim for breach of the Purchase Agreement.

**IT IS FURTHER ORDERED** that all remaining motions (Doc. ##52, 65, 80 and 82) be and hereby are **OVERRULED without prejudice.**

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over plaintiffs' state law claim for breach of the Limited Warranty.  The Court dismisses without prejudice plaintiffs' state law claim for breach of the Limited Warranty.

---

[19](...continued)
times, plaintiffs asked or even insisted that Pulte buy back the home, but Pulte cites no provision in the warranty which provides that such requests by themselves void the warranty.

Dated this 1st day of December, 2010 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge